May it please the Court. Good morning, Your Honors and Mr. Marriott. My name is Linda Ziskin. I am the counsel for the Plaintiff Appellant, Mr. Borrelli. I've asked for three minutes in rebuttal. I'm having some vision problems today, so. I'll help you. Yeah, I appreciate that. I can, I think I can see it turn yellow. Try to talk so loud you can see me. All right. You know, Social Security cases really have a fundamental underpinning of everything, in every case, of due process. And we expect the ALJs to do things right. And we expect them to conduct the sequential analysis in the proper manner. And here, Mr. Borrelli did do his job of producing the evidence in Steps 1 and 2 to establish his prima facie case of disability. And we know that because the ALJ then issue here is going to be regarding his knee, his knee impairment. Because that, if we decide a certain way about his knee, then we don't need to reach the issue, the bruise issue of the new evidence. Some of the new evidence was seen by the Appeals Council, and we know under Ramirez and Bruise and Harmon that that's definitely a part of the record and definitely before you. However, it wasn't as probative as the evidence that just strangely appears in the beginning of the record, that the district court didn't think the Appeals Council had seen, but they were not sure. That alone is a reason for remanding this case under Harmon. However, I think I missed that argument in your brief. Can you enlighten us a little on that? Yeah. What I talked about in my brief, and the district court mentions this, is that I did not talk about the evidence at Exhibit 13-F, the later evidence that was submitted by prior counsel. I wasn't involved at the administrative level. Okay. And you said that the first part of that report is probative? Well, it starts at ER-21. It's in the very beginning of the administrative record, and that's not usually a place where you see the medical records. And it's just sort of inserted there, and the district court thought it was odd. And there is some evidence in there that What is the new evidence? Is it a new evaluation or exam by? Yeah. It's Dr. Temick who determined that Mr. Borelli had what he termed end-stage degenerative joint disease of his right knee. And this is two months after the decision, only two months. So it stands to reason that end-stage would have predated the ALJ's consideration of this case. And, in fact, we know from 2004 onward, when the treating doctor who was Dr. McMillan, Eric McMillan, diagnosed the knee condition back then. So there's plenty of evidence here that Mr. Borelli's knee was going out and it was quickly progressing to a really untenable situation for him as far as being able to stand and walk. There are inconsistencies that my opposing counsel here will undoubtedly bring up to you that, yes, he walked for exercise. It doesn't say how much he walked. And he did clarify he walked a half a block. And we all know with arthritis that it comes and goes. You have good days and bad days. And he was doing what he could do. He was walking for exercise when he could. But can this man stand and walk for six hours every day in a light exertional level job? That's really the dispositive issue. Because if he can't, then he must be found capable of sedentary work. And we know because of his age that we look to the guidelines, to the medical vocational guidelines or the grids first, even though there's non-exertional impairments. And they direct a finding of disability if he's limited to sedentary because of his age. That's really the case. Why did the ALJ find that he could do light work? Ms. Niskan, wasn't there an issue in the briefing as to, I think you had argued that he was actually at the advanced stage? No, I, yeah. Actually a year, a year away? I became a lawyer instead of a doctor because I can't do math. So I retracted that argument. So that's not before us anymore. He's not borderline age. He is squarely though. Okay. But you were just arguing that because of his age now, he wouldn't. Then. Then. At the time of the decision, he was actually 53. So he's not approaching, if he was 54 and minus a month from 55, then I'd be arguing the borderline age to you. But I'm not because I was wrong. And I did retract that in my reply brief. So I apologize to the Court for that. I read your retraction. Yeah, I apologize. But he is squarely in the middle of that closely approaching advanced age category. And squarely in the middle of that category means that if he can do less than light work, somewhere between light and sedentary, and we don't know exactly where, is he closer to sedentary? Then he grids out. Is he closer to light? Then maybe he's not disabled. It would really have been nice to know how close he is. And that's the ALJ's job to do that. It's. ALJ didn't have the stuff you're talking about, right? I mean, I got to confess, I'm a little confused. You did. Because I was referred to evidence, the additional evidence. There are two sets of additional evidence. Right. And I'm busy looking at the stuff that all preceded this from like 2005 or something like that. And I take it, I'm trying to sort through here. What exactly, you're pointing us now to something that came in after the ALJ's decision? Right. There's two sets of evidence. And you're right to be confused. The district court was confused, too. And they did a good job, actually, of correlating the evidence with what the ALJ already had. So because of the district court's work in doing that, we know that the ALJ saw the, what I consider to be the probative and dispositive evidence at the beginning of the administrative record, which you'll find starting at excerpts of record 21. And the particularly important record is at 25. So how much of ER 21 did the ALJ have? We think he, according to what the district court says, he had page 25 correlates to 200, which is a later exhibit, ER 200. The ALJ saw all that. That was from 2004. So because he saw all that. Wait a minute. Wait, wait, wait. Yeah. I just made my way to, like, 21, 22 and so forth. Right. And this is all saying 2010. Exactly. So that's, so the first two pages, 21 and 22 is Dr. McMillan after the ALJ decision. But this is where he's calling it end stage. Then you proceed to, and then 23 is also, is Dr. Temick, who is the knee surgeon. And this is also, this is 8-16-2010, also a few months after the decision. But then you get to ER 25. The date on this is 10-11-06. So the ALJ would have seen this, and the district court confirmed that he saw it because it also appears at ER 200. But what's in that, in the 2005 material that really changes anything? Well, it's the evidence that he had a degenerative progressing knee condition, which the ALJ completely ignored. At a time that he was working. So it wasn't a disabling. After, after. I mean, he had a knee, I mean, I've got arthritis. Right. You'll find records going back to age 12 that says I have arthritis, but that doesn't say that I'm disabled at some point in the future. So I was really kind of lost as to what the earlier, how the earlier documentation really was so compelling as to change, to change the factual finding. Well, it just shows that it's a progressive disease, and it existed before, while he was working, and he had trouble continuing to work, and he stopped working because of it. So after his onset of disability, his AOD, which I believe was in 2007, the records show that he, his knee continued to get bad. It's just, you would think that the ALJ would have said something about his knee. Well, he did. Not really. He just mentioned that Mr. Borelli talked about needing knee surgery at the hearing. That's all he said. The severe, I mean, I can find it. The severe impairment is psoriatic arthritis. I mean, that's the impairment. It manifests in the knee. No, it's a different kind of arthritis. The psoriatic arthritis is related to psoriasis, which is a skin condition, and it manifests itself as a form of arthritis for which he was being treated by a rheumatologist. The knee is osteoarthritis, totally different. Take a look at ER 18, which is the ALJ's opinion, and I'm looking at the second paragraph there in which he says the ALJ is recounting the pain symptoms that your client is having pain all over his body, as indicated. He further indicated that he needed a knee replacement. However, the record only shows complaining of knee pain with no objective pathological findings. And that's just totally wrong, because there are MRIs and X-rays in the medical evidence that show this compartment narrowing and all of the other attendant symptoms of the osteoarthritis bone-on-bone, finally leading them to say this is end-stage osteoarthritis of the knee. End-stage. The end-stage opinion comes later, right? Actually, it came in, I think Dr. McMillan said that he had indicated two years previously, even, which is square in the middle. I thought your whole argument was it was this 2010 report from Dr. McMillan that used the term progressive degenerative, right? And he said in that report in 2010, he had called it end-stage two years previously, 2008. But where in the 2008 records would the ALJ have seen that? Since he didn't see the 2010 report from Dr. McMillan. Well, I would have to find it for you. I mean, there's a lot of medical evidence here. There are two volumes like this, as you know. I would find it for you and write you a post-hearing memo, post-argument memo on that. Well, I don't need a post-argument memo. I just need an ER site. You've got four minutes left. If you want to sit down and see if you can find it, we can hear from the counsel I might very well do that. Thank you. Good morning, Your Honors. Michael Marriott on behalf of the Commissioner of Social Security. Claimant has not challenged the ALJ's adverse credibility finding, has not challenged the ALJ's rejection of the treating physician opinion. Well, on at least one level they may have. I mean, there's a ALJ makes a point. This is on AR 17 about the failure to submit additional medical records to document his allegations of pain, provided medical records only up to July of 2008. And this is the quote. If the claimant experienced pain or a limitation to the extent and severity of his claims, it is unreasonable to have no medical records after July 2008. There is, as part of the later submission, all sorts of medical records after July 2008. Now, why it wasn't submitted to the ALJ, I'm completely baffled. But it comes in later. And so to the extent that the credibility determination is based on the lack of any medical treatment after that date, it seems to me they are questioning the finding by saying, look, we got all these records that show he was seeing a doctor every two or three months, and the doctor was reporting these pain symptoms. Well, as the ‑‑ I believe that's in the second set of medical records to which you're referring, to which counsel has made no argument. But the district court ‑‑ Well, maybe not in the brief. We just heard a good bit on oral argument, and it's in the record in front of us. So are we supposed to consider it or not? Well, any ‑‑ per the regulations, we have a regulation that specifically prohibits the consideration of evidence that's dated after the ALJ's decision. In addition, the district court ‑‑ Okay. Does that mean evidence submitted after the ALJ's decision or evidence that was generated? So, I mean, we have medical reports, for example. The date I decided here is that the ALJ said there were no medical records past July of 2008. There are medical records that were submitted later from the time period in 2009, prior to the close of the hearing and prior to the ALJ's decision, which is why I say I'm baffled as to why they weren't submitted to the ALJ, but they weren't. They come in later. The regulation you cite, I understood to apply perhaps to records of examinations after the decision. Does it exclude examinations prior to the decision, even though the records weren't submitted until after the decision? No, Your Honor. Your first analysis was correct. It's records dated after the date of the ALJ's decision. So we have these post‑July 2008 records that indicate he continues to go see Dr. Delpain and reports pain. Well, the ALJ says, gee, if he were really in pain, you would have gone to see a doctor. Turns out he did. The ALJ didn't have the evidence of it, but he did. So that's why I raised the question that I think there is something of a challenge to the credibility determination, not that the ALJ didn't act properly based on what he knew about, but it turns out there's stuff that he didn't know about. And if that's the case, isn't that a basis to send it back to permit the consideration of the material that should have been submitted earlier but wasn't? No, Your Honor. And there are two reasons for that. The first one is that the ALJ's credibility finding was based on a number of criteria, not exclusively that one. That was one of the criteria the ALJ considered, but it was far from the only criteria. The second is that ‑‑ Let's just break it down in arguments. It was one of the criteria. So if it was one of the criteria for determining his credibility on this, the question of materiality of the new, wouldn't that be material to the determination of this issue if the AJ himself had said there's no indication that he's seen other people and now the new material comes in and shows that he had? So it's at least material, wouldn't you say? On that one point, yes. Okay. So if it's a material to his determination and he didn't have that information before him, why wouldn't a remand so that they can consider material matters, so that AJ can consider things that were material to his decision to see if that's his decision would be the same, or his ‑‑ are you arguing, and if you do, you show where irrespective of this credibility determination, basically he would have come to the same conclusion or had to come to the same conclusion anyway. How would he have come to the same conclusion based upon what he said? Well, there's ‑‑ even without this one factor in the credibility finding, there is still substantial evidence to support the ALJ's credibility finding. And moreover, and part of that is the district court actually independently reviewed that other, the second set of subsequently submitted medical documents and found that that, in fact, further supported the ALJ's credibility finding. Because while it did show that the claimant continued to seek medical care after 2008, it also showed improvement in symptoms. It also further undercut much of what claimant had testified to, as well as Dr. Delpain in particular, one of the ‑‑ an opinion by Dr. Delpain about claimant not being able to walk at all. The subsequent reports did, in fact, discuss that, and it appeared that claimant was now rehabilitating and walking for exercise and the rest of it. So the subsequently submitted documents essentially take away slightly one part of the ALJ's credibility finding, but they prop it up as a whole. Mr. Marriott, let me ask you a practical question. If we were to remand this claim, I assume that the ALJ reopens the record, and does that then permit the claimant to interview not only arguments based on the new evidence that was submitted to the appeals council, but also any additional medical evidence that he might have accumulated in the meantime? That I'm not sure about, Your Honor. So would he be able to introduce evidence that as he stands today, his knee is totally shot and he needs a knee replacement? Well, no. That would be evidence that was dated after the ALJ's decision. The period that we're looking at is from the alleged onset date of December 2007 to the ALJ's decision in May 2010. So is the cutoff then, what, the date of the appeals council decision? The date of the ALJ's decision, May 2010. Well, then I guess I don't understand the concept of new evidence. Are you saying this is evidence that predated the disability hearing, but for some reason was not presented to the ALJ, which was then later presented to the appeals council? Is that what we're dealing with? Because I misunderstood. I thought Ms. Ziskin was arguing that there was in essence a new medical report from Dr. McMillan saying the knee is gone. There is a report from Dr. McMillan that discusses the condition of the claimant's knee, but because this is dated after the ALJ's decision, this is not relevant to the time period that the ALJ is looking at. The ALJ found claimant not to see the knee. You can't consider it? It's not competent evidence for that reason? Pursuant to the regulations, no. That evidence cannot be considered. District court referred to two sets, but it may be easier for me at least to divide it into three. We've got one set that precedes the disability claim date from like 2005. We have this subsequent set after July 2008, part of which comes before the ALJ's decision, part of which comes after. The last two reports, which we were talking about during your colleague's argument, happen to be the parts that came afterwards. And you're telling us that the regulation tells us not to pay attention to that. Is that correct? Any evidence that's dated after the ALJ's decision. Okay. And so that would exclude the part we were talking about at AR 2324, those pages? That's correct, Your Honor. Okay. But the part that came before the ALJ's decision, I have too many dates, that was in the hearing was in December. The decision is in May 2010. Is that correct? Yes, Your Honor. So materials from examinations prior to May 2010, even if not submitted until later, that's fair game. Is that correct? If it's new and material and there was good reason for not submitting it earlier, then yes, an argument could be made for that. If it's material, even though it comes after the determination, but it relates to examinations and evidence that was occurred prior to the determination, it can be considered. My understanding is that we're distinguishing between when something is produced and what something that something relates to. And if it comes before the counsel as additional evidence for consideration and it relates to things prior to the determination, that's for consideration of the counsel, isn't it? If it's evidence from before the ALJ's decision. We're distinguishing between when something is presented and what that relates to, whether it relates back in time to something that occurred prior to the time that it's presented. And if that's within a relevant time period, that would be considered, wouldn't it? My understanding is under the regulations, as long as that evidence is dated after the ALJ's decision, it cannot be considered. Well, I'm not sure you're answering the question. The distinction, I think, that we're trying to draw here is a report that would be generated after the date of the hearing but discusses evidence prior to the date of the hearing. And that's presented to the counsel before it makes its determination. Do you understand the question? I do, Your Honor. Based on my understanding of the regulation, as long as that evidence postdates the ALJ's decision, even if it relates back, it's that it's postdating the decision. And so per the regulations, it's not to be considered. If that's sent to the appeals counsel, the appeals counsel is directed to return that evidence. So if the doctor generated a report talking about things that happened before the hearing but the report was generated between the time the ALJ issued his decision and when the appeals counsel receives the matter, then that's not properly considered new evidence. That's correct, Your Honor. And then, because I'm really sort of a practical lawyer, I want to know what the consequences are going to be at my ruling. If we remand him and he goes back for a rehearing, is his only remedy at this point if his knee truly is shot to file a new claim for a new period of disability? Can you rephrase that question? Let's assume that on April 8, 2014, Mr. Borelli's knee is gone and there's no conceivable way that he can work now because he needs a knee replacement. And that's the state of his knee today. If we were to remand this case because of the problems that we've been discussing with both of you, you say he can't raise that evidence on remand. So is his only remedy to file a new disability claim for a later period of disability? That's correct, Your Honor. And it's within that same regulation that I was referencing earlier. If there is subsequent evidence that's dated after the ALJ's decision, the remedy for the claimant is that they have the ability to file a new claim based on that evidence. So if Mr. Borelli were to have found, you know, had subsequent evidence that his condition worsened, he is able to file a new claim with, you know, that would begin after the ALJ's decision. I'd like to address something that my opponent had discussed. It was counsel argued that the RFC was for less than light. That was from the first argument in the reply brief. That's actually not correct. So counsel confuses the category of being between two exertional levels, but the claimant in this case, per the RFC finding, was able to perform all the exertional requirements of light work, that being lifting 10 pounds regularly or 10 pounds frequently, 20 pounds occasionally, and standing and sitting and walking for six hours per day. So that's squarely within the light exertional level. So plaintiff had both exertional and non-exertional limitations. And that's quite a bit different. And in such a case, all that does, that doesn't implicate the grids in the same way. What that fundamentally does is simply requires the ALJ to obtain the testimony of a vocational expert, which is precisely what the ALJ did. Unless the panel has any further questions for me. Anybody got anything more for Mr. Marriott? No, I think that's all we have. Thank you. Thank you. Is this good? We have about four minutes left. Well, I found it, but I would like to address what the last point that my opposing counsel colleague made, which is that the ALJ actually did specifically and expressly say that the range of exertional limitation was less than light, less than the full range of light. So Mr. Marriott helpfully did the ALJ's job for him by telling us that it wouldn't have made a difference, that it was closer to light than to sedentary. It's the ALJ that has to do that. And that's SSR 8312, which is binding on the agency to follow their own rulings. The other thing I'd like to point out is that opposing counsel. I'll make sure I understand your point. Your argument is he didn't make an express declaration, that he sort of fuzzied up the, what should have been, it's either sedentary or it's light. It's not somewhere in between. Well, what the SSR tells us, it was fuzzy what the ALJ did, because what the SSR tells us is that the ALJ has to make a finding with rationale that explores that nebulous area in between, because when we're dealing with the grids, we have to be precise, because there's a directed finding of disability there. So the ALJ has to do its job and do an analysis. Does this fall closer to light or does it fall closer to sedentary? Wait a minute. Most people don't fit entirely within a box, and that's one of the reasons why I have a vocational expert to deal with in particular. And there was a vocational expert here. Yeah, but that doesn't obviate his responsibility to do the analysis per 8312. Also, you have to look to the grids first, and I think Lingenfelter is the case that tells us that, as well as 8312 and other case law. It's like sentencing guidelines. You look there first, and then you look for the mitigating factors. And here, if you look, if he's closer to sedentary, he's 53, he grids out. So the ALJ has got to be careful. And, again, that goes back to my notion of, like, what's due process got to do with this? Everything. He's got to do his job, and he's got to make the analysis. So here we have a very flawed decision. He didn't do the 8312 analysis. He ignored evidence of the need, and I'll find out for you. He did everything he was supposed to do in terms of process at the time that he made his determination. It seems that the AJ did everything to do, and that's what this case is really about. Sotomayor, this is a friendly question. I don't know if you're going to run away from the argument. Maybe you ought to listen. But what really bothers me, I don't know about the rest of the Court, is that there is relevant evidence material to the rationale that was used by the AJ that he didn't have that may be properly considered by the counsel and by this Court that undermines the rationale for the AJ's decision. Not necessarily that he botched it, but that there's other considerations and other evidence that are properly before this Court and the counsel, if so. Counsel says they're not, opposing counsel, that undermines that determination. And that's why the remand would occur. Kagan, I understand what you're saying, and I appreciate your take on it. Substantial evidence. If we're just going on the evidence that's there, and he touches all the bases and he discusses everything, I don't know how we can say there wasn't substantial evidence at the time that he made that determination. That last part that you just said is the part I disagree with. I don't think he touched all the bases, because he had evidence, and that was what I sat there and found for you. There was evidence of the knee condition before him. And as the court, the district court pointed out on page 8 of their decision, of their opinion, it was duplicated in the record. Okay. And I already mentioned the page numbers to you. So he did have it. It was a health failure. The page numbers you mentioned were for reports that came in after the decision. That's 2324 and so forth. So what page numbers do you have to give us for stuff that is before the ALJ's decision? I'm still waiting for the answer to my question that I gave you before you sat down. Did you do your homework? Indulge me and repeat it, please, Your Honor. I wanted to have the record cite for the 2008 reference to the bad knee. That you say Dr. MacMillan had previously talked about. In front of it. Well, let's see here. I found it at one point. We have at ER 218, okay, this is 2004. This was before the ALJ. That is the MRI of the right knee. And then the next page, 219, is an X-ray. Also in 2004. So you wanted to see evidence in 2008, and I don't have that for you, but what we do have is Dr. MacMillan's comment in 2010. After the ALJ's decision. Right. That two years prior. We've been told that we can't consider that. And you haven't responded to that. Let me respond to that now, Your Honor. Opposing counsel tells you that the regulations militate a certain result with that kind of evidence, but he ignores case law. Again, Lingenfelter and other cases do tell us that when it – when the after evidence, after decision evidence relates back to the relevant period of time, it can be considered. The question is, is this a remand? Yeah, the problem with him with your argument is that regulation is to avoid having counsel run out after the hearing and the ALJ's decision and go back to his doctors and say, look, the hearing didn't go very well, I need a new report, and here's what you need to talk about in the report. So how do we protect the integrity of the truth-seeking process? Well, that's – that could happen. That's very intuitive. But the regulations don't speak to any intent by administrative counsel. It could happen. This discussion, I guess, hypothetically. Yeah. You did ask what would happen if it was remanded. It is, for all intents and purposes, a de novo review. More evidence can be brought in, but it does need to relate to the relevant period. The argument is always made that it can relate back if it's after the ALJ decision. Depending on his situation and his date last insured and whether he might now qualify for SSI, his only recourse, and he probably does not have this available to him, would be to apply again with the new onset date being the day after the bad ALJ decision. Right. Why couldn't he? Well, if – I'd have to double-check one is, date last insured is, I believe it's past, and also he's not in a financial situation that he would qualify for SSI. SSI. So he's kind of dependent on this. Half a minute's over, but thank you. Thank you very much. Thank you, Your Honor. The case that's argued is submitted.
judges: Benavides, Tallman, Clifton